NicholsoN, C. J.,
delivered the following dissenting opinion.
The bill in this case is filed to make the securities of Nathan Ward, as executor of John Ward, deceased, responsible for about $1,000, which came into his hands as such executor in pursuance of the will of said John Ward. Nathan Ward, the executor, having died insolvent, the bill is filed against his securities only.
The will was executed in March, 1847, and in 1848 it was proven, and Nathan Ward entered into bond as executor, with defendants as his securities. After various directions as to his property, not necessary to be mentioned, the testator provided, that his executor should sell all of his estate, real and personal, after the death of his wife, for an equal distribution among his children named. He then directed that the share going to his daughter, Louisa Porter, should not go into her hands or *22 those of her husband, but be kept, preserved and loaned out at interest, in trust for her, by his executor, whom he appointed and directed to act as trustee for her; the interest or profits of her share he desired his executor or trustee as aforesaid, from time to time, to pay over to said daughter, Louisa, with a discretionary power to use a reasonable portion of the principal by his executor and trustee for her necessities, the residue after her death to be divided amongst her children. Complainants are the children of Louisa Porter, who is dead. They allege that Nathan Ward made his last settlement as executor in 1857, by which it appeared that complainants were then entitled to about $1,070. They state that John Ward’s widow, who had a life estate in all the property, lived only a few years after his death, when the estate was sold as directed by the will, and converted into money. That Nathan Ward failed to put the money out at interest, but used it for his own purposes, and died in 1867 insolvent.
Defendants demurred to the bill, upon the ground that it appears upon its face that after the death of his wife, testator directed his executor to sell the real and personal estate, and when the same was converted into money, he should hold the share of Louisa Porter, and manage the same as trustee; and for that reason the securities insist they are not responsible on the bond of Nathan Ward as executqr.
’ The \'Chancellor sustained the demurrer, and dis *23 missed the bill, from which decree complainants, have appealed to this Court.
At tbe date of the bond executed by Nathan Ward and Ms securities, in 1848, the Act of 1888, c. 3, § 18, was in force, and- must govern the liability of the securities. Under the Act of 1813, it was held in the case of Hughlett v. Hughlett, 5 Hum., 467, that an executor was only bound to-give security as administrators were, for the faithful performance of his duty in administrating the legal effects of his testator’s estate; that the County Court had no more power to exact from him a bond for the discharge of his duties as trustee in selling and disposing of lands under the will, than the Ecclesiastical Court in England had, and that any bond taken for that purpose was, to ' all intents and purposes, null and void. This authority is conclusive of the cases before us, unless the power of the County Court has been so enlarged by the Act of 1838, as to include not only the power to take bonds of executors covering the performance of their duties as executors, in regard to real as well as personal estates, but also their duties as trustees imposed upon them merely as trustees and not as executors.
This renders it necessary for us to construe the Act of 1838, in reference to the particular facts of the case before us. The section is in these words: “All executors hereafter qualified,- and their securities, shall be liable upon their bonds, 'for the performance of all the trusts of the will, which they *24 are required to perform, and all tbe duties devolving upon them as executors, as well in relation to the real as personal estate; and, in like manner, administrators hereafter appointed, and their securities, shall be liable upon their bonds for the performance of all the trusts and duties of their respective offices, as well in relation to the real as personal estate; and such bonds, when taken in the forms heretofore prescribed, shall bind such executors and administrators, and their securities, as herein provided.”
We have already stated that, prior to the passage of this Act, the securities' of executors could only be held responsible for the legal assets that came into their hands. This question was definitely settled, for the first time in our State, in the case of Hughlett v. Hughlett, 5 Hum., 453, decided in 1844; but in the case of Deaderick v. Cantrell, 10 Yerg., 263, the question as to the liability of executors for the performance of trusts as to the proceeds of real estate sold by them jointly as executors, was thoroughly examined by some of the ablest lawyers in the State, viz.: R. J. Meigs, James Campbell, Geo. S. Yerger, E. B. Fogg, W. Anderson, and E. H. Ewing. In that case the securities of the executors were not sued. It was a bill to hold one executor responsible for the waste of the funds derived from the sale of real estate by his co-executor. He was held liable, not as executor merely, but as a co-trustee, upon the ground that by his acts in joining in the sale, joining in *25 tbe taking of notes payable to botb, and in allowing his co-executor to hold the notes, and collect the money, and waste the same, he had rendered himself responsible for the joint act. Yet, in that case, it is manifest, the liability was not fixed upon the co-trustee simply because he had joined in the executor’s bond, but because he had became a joint trustee by accepting the trusts imposed by the will. It became clearly foreshadowed in the argument of the case, and in the opinion of the Court, that in such a case the securities, of the executors could not be held responsible for the waste by the executors of assets derived from the sale of such estate. The decision in the case of Deaderick v. Cantrell was made at the December Term, 1887, while the Legislature was in session. The section of the Act of 1838, under consideration, was prepared by one of the counsel engaged in that case, Jas. Campbell, Esq., for the purpose of remedying the defect in the Act of 1813, and the same was passed into a law.
"We have given this history of the 18th section under consideration, for the purpose of showing distinctly the evil which was intended to be remedied. The evil was this: that although an executor was required to give bond and security for the discharge of the duties and trusts imposed on him, yet his securities were not responsible for his waste of the assets, if those assets were derived from the sale of real estate. The evil was not that the executor himself was not responsible for real estate assets, but that his securities were not liable. This having *26 been tbe object of tbe law; as ascertained from contemporaneous judicial bistory, wbicb is witbin tbe recollection of one member of tbis Court, wbo was a member of tbe Legislature of 1837, and was instrumental in part in tbe enactment of tbe law; we have only to turn to tbe section to see if, upon a fair interpretation of its language, it does any more than to remedy tbe evil pointed out.
Tbe section is made up of two ■ distinct clauses; tbe first bas reference to executors and tbeir securities; tbe second, to administrators and tbeir securities. Tbe first provides, that “all executors hereafter qualified, and tbeir securities, shall be liable upon tbeir bonds, for tbe performance of all tbe trusts of tbe will, wbicb they are required to perform, and all duties devolving upon them as executors, as well in relation to real as personal estate.” It is clear that tbis provision fully remedies tbe evil in tbe case of executors and tbeir securities. It makes them liable on tbeir bonds for all waste of tbe executor, whether that waste result from tbe mismanagement of real or personal estate. Tbe section does not undertake to alter or enlarge tbe well established legal meaning of tbe word “executor,” but it makes bis liability and that of bis securities co-extensive with tbe trusts imposed upon him as executor by tbe will, and tbe duties devolving upon him as executor. Tbe trusts referred to, are those imposed by tbe will ' in regard to real estate; tbe duties devolving on him as executor, are those wbicb concern tbe personal estate. In *27 tbe language of Judge Turley, in Hughlett v. Hughlett, “tbe word executor is a technical term, and applies to duties to be performed in relation to tbe goods and chattels, rights and credits of tbe testator, in contradistinction to that of trustee, which applies to duties to be performed in relation to real estate.” "We cannot concur in the opinion of a majority of the Court, that the Legislature intended to enlarge the definition of the word “ executor.” Whether the waste result from violations of the trusts imposed upon him as executor, or the duties devolving upon him as executor, the liability of his securities is provided for. This was a complete remedy for the evil to be cured.
But it is argued that this provision of the section goes further, and makes the securities of an executor liable for waste resulting from the mismanagement of funds which come into his hands, not in his character of executor, but in the character merely of a trustee, even where the testator has designated the officer as a trustee. This argument rests upon the words, “for the performance of all the trusts, which they are required to perform.” It is conceded that this language, taken by itself, would include all trusts imposed by the will, whether imposed upon him as executor or as a trustee. But the language must be construed in connection with that going before, and that coming after.
. It may well be asked, who is it that is thus to be liable? The answer is, in the language of the statute: “ all executors hereafter qualified.” Then *28 it is as qualified executors that they are to be liable for all trusts imposed. And then it may be asked, how imposed? The answer is: “by the will.” But they are liable also for all duties devolving upon them — how devolving upon them? The answer is: as “ qualified executors.” But next, what are the trusts and duties, for the performance of which the qualified executors are liable? The answer is: in,, relation to real as well as personal estate. It follows that the whole liability of the executor and his securities, arises from his failure to execute the trusts of the will imposed upon him as such executor, or his failure to discharge his duties under the will as such executor, whether the failure be in relation to real or personal estate. It was, therefore, not intended by the section to make the securities of an executor liable for his failure to perform trusts imposed upon him by the will, but not in the character of executor, unless we presume that the Legislature intended to abandon the common law definition of the words “ qualified executors,” and to abolish the well settled distinctions of law as between executors as such, and other trustees as such.
In the case before us, according to the allegations in the bill, the testator imposed certain specific trusts upon his executor, to be executed by him in that capacity. He then imposed upon him other trusts, after those as executor should be executed, to be discharged as trustee eo nomine. In other words, to the trusts of executor he superadds addi *29 tional trusts as trustee. Under our construction of the section under examination, tbe securities of the executor would be liable for the discharge oí his trusts as executor, but not for those imposed on him simply as trustee: Hill on Trustees, (side page,) 287, and authorities cited.
It follows that the general rule as to the liability of the securities of executors, is, they are to be accountable for the faithful discharge of all the trusts and duties imposed upon the executor by the will, whether those trusts and duties relate to real or personal estate; but for the discharge of trusts imposed upon the person named as executor, which trusts are not required to be discharged as executor, but in some other fiduciary character pointed out and specified by the testator, such as testamentary guardian or other specified trustee, the securities of such executor are not responsible.
Every case, therefore, must depend upon the intention of the testator, to be derived from his will, and upon the particular facts connected with the case. If, by the express terms of the will, the person named as executor is also named as trustee, and thus holds the trust fund in two capacities, after the two years allowed him to settle his trust as executor, the law will presume that he did his duty, and that after that period he holds as- trustee; but this presumption is subject to be rebutted: Carroll v. Bosley, 6 Yer., 220.
If one has two capacities in which to take and hold, and takes and holds without any declaration *30 in which capacity he does so, it will be taken, he holds in that capacity in which he ought of right to take and hold: Harrison v. Ward, 3 Dev. Rep., 417.
In the case before ns, it appears from the bill that Nathan "Ward was qualified as executor in 1848, and was required to convert real and personal estate, upon the death of testator’s wife, which occurred within a few years of that of testator, into money. The executor then converted the property into money, and by his last settlement, made in 1857, showed that he had in his hands about $1,000, belonging to complainants. If there was nothing in the will imposing other trusts and duties upon him, than those imposed as executor, no doubt could exist as to the liability of the securities. But the bill alleges that the executor was required, after selling the real and personal estate, to make an equal distribution among the children of the testator named, and that the share of complainant’s mother should be kept, preserved and loaned out at interest, in trust for her by his executor, whom he appointed and directed to act as trustee for her. Here is an express intention of the testator, that after his executor had discharged his trust in selling the property and converting it into money, and distributing the proceeds, he should then act as trustee for the mother of complainants, in loaning out. her share. It is, therefore, manifest, upon the allegations of the bill, that Nathan Ward was appointed to act in two capacities; and, upon the *31 authorities cited, the devastavit charged to have occurred after 1857, would be presumed to have occurred in his capacity as trustee, and hence that his securities as executor are not responsible.
The Chancellor so held, and we concur in his conclusion.
EbeemaN, J., concurred with Nicholson, C. J.